UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JERMAINE CARL DAVIS,

Plaintiff,

v.

MICHAEL RUPERD, DANIEL BLAKLEY, ANDREW PLILEY,

Defendants.

CAUSE NO. 3:25cv387 DRL-SJF

OPINION AND ORDER

Jermaine Carl Davis, a prisoner without a lawyer, filed a motion for leave to file a second amended complaint. ECF 24. At this stage of the proceedings, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). When justice requires it, leave should be freely given. *Id.* "Reasons for finding that leave should not be granted include undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007). In the interests of justice and judicial economy, the court will grant the motion and direct the clerk to separately docket the second amended complaint.

Under 28 U.S.C. § 1915A, the court must screen the second amended complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief

may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must give a *pro se* complaint liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Mr. Davis alleges he was sitting in his cell watching television when the steel shelf in his cell at the Indiana State Prison (ISP) "shifted." ECF 24 at 2. He noticed that the bolts were mounted to the wall incorrectly and only a thin string was holding it up. He filled out a request for interview form advising his caseworker that a maintenance order needed to be placed to fix it. The caseworker told Mr. Davis the workorder had been submitted on January 10, 2025. On January 19, the shelf fell off the wall and injured Mr. Davis's leg and back. He was escorted to medical where he was treated for his injuries.

Mr. Davis began filing grievances about the matter on January 21, 2025. On January 22, Mr. Davis visited the medical unit and saw Michael Ruperd, the maintenance foreman, while he was there. Mr. Davis asked him whether he had seen the workorder, and he allegedly admitted "he should have took down the shelf because he had a feeling somebody was going to get hurt from the shelf" but claimed it "wasn't his problem because he don't live in my cell, he got a big house with a big bed." *Id.* at 6 (verbatim). Foreman Ruperd told Mr. Davis to "blame" Daniel Blakley, the maintenance supervisor, because "he made the decision to wait a few weeks to repair the steel shelf." *Id.* On

February 3, 2025, Mr. Davis filed a grievance based on what Foreman Ruperd had told him. The next day, Foreman Ruperd installed a new shelf in Mr. Davis's cell. Mr. Davis has sued Foreman Ruperd and Supervisor Blakley for being deliberately indifferent to his "health and safety" and placing him in "imminent danger" by failing to repair the steel shelf in his cell before it fell. *Id*. at 7–8.

The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). An officer can violate the Constitution if he or she exhibits deliberate indifference to hazardous conditions that may seriously harm an inmate. *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021). Deliberate indifference encompasses both objective and subjective components:

> A prisoner challenging conditions of confinement must first show that the conditions were sufficiently serious as an objective matter, meaning that they denied the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety. Second, in covering the subjective component of the inquiry, the inmate must prove that prison officials acted with deliberate indifference—that they knew of and disregarded this excessive risk of harm to the inmate.

*Id*. at 719–20 (quotations, citations, and brackets omitted). Put another way, an inmate can state a viable claim for deliberate indifference if he alleges the defendant "deliberately ignored a prison condition that presented an objectively, sufficiently serious risk of harm." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citation omitted). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cty.*, 44 F.4th 605, 615 (7th Cir.

2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing). "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to state a constitutional claim. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020); *see also Stockton*, 44 F.4th at 615.

Mr. Davis's amended complaint doesn't state a viable Eighth Amendment claim against either of the maintenance workers. Even accepting his assertion that they knew about the improperly mounted shelf as true, these facts show—at most—they had notice of a potential hazard but chose a non-immediate repair timeline rather than treating it as an emergency. Objectively speaking, no facts suggest the shelf created an obvious, serious, and imminent risk of danger—Mr. Davis alleges it was improperly mounted but acknowledges it was being held up by string tied to the bolts. He doesn't claim the string was fraying or in danger of snapping. *See Thomas*, 2 F.4th at 719–20. Mr. Davis admits Foreman Ruperd told him Supervisor Blakley had scheduled the repair for a few weeks out, but, regrettably, the shelf fell before then. These facts sound in negligence rather than deliberate indifference. *See, e.g., Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015) (delay "may or may not have been negligent," but it wasn't deliberately indifferent or "reckless in the criminal law sense" to transform it into a constitutional violation); *see also Hildreth*, 960 F.3d at 425–26. Mr. Davis hasn't stated a viable Eighth Amendment claim.

In addition, Mr. Davis asserts that Foreman Ruperd and Supervisor Blakley are liable to him for negligence. Negligence is a state law claim that triggers application of

the Indiana Tort Claims Act (ITCA). Ind. Code § 34-13-3 *et seq.* The ITCA prohibits tort suits against government employees personally for conduct within the scope of their employment. *See* Ind. Code § 34-13-3-5(b); *see also Katz-Crank v. Haskett*, 843 F.3d 641, 648 (7th Cir. 2016) ("[T]he Indiana Tort Claims Act confers on public employees a broad immunity from suit for acts committed within the scope of their employment."); *Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014) ("Under the Indiana Tort Claims Act, there is no remedy against the individual employee so long as he was acting within the scope of his employment."). "If an alleged action is within the general scope of an individual's authority, it is authorized within the meaning of the Tort Claims Act, regardless of whether it was done negligently or with improper motive." *Reiner v. Dandurand*, 33 F. Supp. 3d 1018, 1033 (N.D. Ind. 2014) (cleaned up).

It's evident from Mr. Davis's allegations that both Foreman Ruperd and Supervisor Blakley were acting within the scope of their employment as prison maintenance employees with regard to the steel shelf. The ITCA protects them from being sued for their actions/failure to act. *Ball*, 760 F.3d at 645. Seemingly recognizing this limitation, Mr. Davis says he is "not suing Michael Ruperd or Daniel Blakley for their negligence for his state law tort claim, instead plaintiff is suing the Indiana Department of Corrections because that is who they are employed by so liability falls on the Department to be sued for their employees negligence." ECF 24 at 14. However, such a claim is barred by the Eleventh Amendment. *Burrus v. State Lottery Comm'n of Ind.*, 546 F.3d 417, 420 (7th Cir. 2008) ("[A]n unconsenting State is immune from suits brought in

federal courts by her own citizens[.]"). Therefore, Mr. Davis's state law negligence claims will be dismissed as well.

Mr. Davis has also sued Officer Andrew Pliley. Mr. Davis claims he began filing grievances about the shelf on January 21, 2025. He says that, on February 4, 2025, "all-of-a-sudden Officer Andrew Pliley planted a homemade weapon in my cell and took me to lockup." ECF 24 at 4. Officer Pliley told him that if he kept filing grievances, "he'll keep finding knives in my cell." *Id*. at 9. He believes Officer Pliley planted the knife in retaliation for "filing legitimate grievances concerning prison conditions about a steel shelf falling off the wall in my call that was improperly installed and maintenance failed to repair in a reasonable time and it seriously injured me." *Id*. at 10.[1] This alleged action by Officer Pliley ultimately led to Mr. Davis being in lockup for a year, losing his suicide companion job, losing a time-cut, and it prevented him from seeing his loved ones.

Mr. Davis can't proceed against Officer Pliley if doing so would undermine a prison disciplinary conviction. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *Edwards v. Balisok*, 520 U.S. 641, 643 (1997) (extending *Heck* to prison disciplinary proceedings). That's because such claims can't be brought unless and until the finding of guilt is "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87; *see also Morgan v. Schott*, 914 F.3d 1115, 1122 (7th Cir. 2019).

[1] He doesn't, however, explain how those grievances were related to Officer Pliley in any way.

Here, Mr. Davis attached a Report of Conduct to his original complaint indicating a "metal object sharpened to a point with a handle" was found in his cell. ECF 1-1 at 48. He was moved to a restricted housing unit "pending an A106: POSSESS DANGEROUS/DEADLY/CONTRABAND/PROP." *Id*. In that complaint, Mr. Davis described the conduct report as being "falsely filed." ECF 1 at 6. Although he didn't attach the results of the disciplinary hearing, Mr. Davis stated, under penalty of perjury, "I sent my copy [of the confiscation report] to the Indiana Department of Corrections for my *appeal* for the conduct report." *Id*. at 7 (emphasis added). Based on this record, the reasonable inference is that there was a disciplinary hearing and that he was found guilty of the charge. He provides no information to suggest that conviction has been overturned on appeal or otherwise expunged. Accordingly, as it stands, Mr. Davis's allegations against Officer Pliley must be dismissed as premature because, if the court found that Officer Pliley planted the knife in his cell, it would mean that Mr. Davis was innocent of the conduct report/disciplinary charge, which would invalidate the disciplinary conviction. *See Boyd v. Anderson*, 265 F. Supp. 2d 952, 959–60 (N.D. Ind. 2003) (dismissing both due process and retaliation claims as premature and noting that "[t]o award damages to [the plaintiff] on allegations that some defendants set him up for a disciplinary charge and that others violated his due process rights during the disciplinary hearing would require a finding that the disciplinary board's finding of guilt was invalid").

Finally, Mr. Davis wishes to add an "Injunctive Relief" claim against Warden Ron Neal. ECF 24 at 11. Inmates are entitled to constitutionally adequate medical care for

serious medical conditions. *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). To establish liability under the Eighth Amendment, a prisoner must show (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As this circuit has explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697-98. Put another way, inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to

"the best care possible," *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("The Eighth Amendment does not require that prisoners receive unqualified access to health care."). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267.

Accordingly, deference must be given "to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotations omitted). This standard "reflects the reality that there is no single 'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) (citation and quotations omitted). Additionally, it is not enough that a medical professional be mistaken in his or her judgment. As noted above, the deliberate indifference standard requires a something "akin to criminal recklessness," *Thomas*, 2 F.4th at 722, rather than "negligence, gross negligence, or even recklessness." *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020).

With regard to non-medical prison officials, they generally don't violate the Constitution it they "reasonably relied on the judgment of medical personnel." *Eagan v. Dempsey*, 987 F.3d 667, 694 (7th Cir. 2021) (quoting *Miranda v. Cnty. of Lake*, 900 F.3d 335, 343 (7th Cir. 2018)). Though prison officials are "presumptively entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care[,]" they may not ignore a prisoner's complaints entirely or refuse to act if they know the medical staff is failing to treat the prisoner. *Id.* (quotations and citations omitted). That

said, "[a]n official's 'mere negligence in failing to detect and prevent subordinates' misconduct is not sufficient.'" *Id.* (quoting *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011)).

Here, Mr. Davis admits he received an x-ray on his left leg and lower back three days after incident and that the x-ray "showed no signs of an injury." ECF 24 at 11. He also admits he has been given pain medication since the injury but takes issue with the fact that he never received an official diagnosis. He says he can't stand up straight without being in pain. He "believes he need an MRI, need to be seen and examined by a licensed chiropractor, or either a back pain specialist," but the "medical staff" isn't allowing him these treatment options. *Id.* at 12 (verbatim). He worries that the pain medication will end up damaging his liver or kidneys if he continues taking it. However, he provides virtually no information about his medical care between the initial x-ray and his issues today. It's clear he is being provided at least some treatment, as he refers to being continuously medicated. Therefore, he hasn't stated a plausible injunctive relief claim related to his medical needs. *See, e.g., Taha v. Intl. Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020) ("[A] complaint must plead more than an unadorned, the-defendant-unlawfully-harmed-me accusation. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (quotations and citations omitted)); *Schillinger v. Kiley*, 954 F.3d 990, 994 (7th Cir. 2020) ("A plaintiff must include adequate factual detail to lift his claims from mere speculative possibility to plausibility.") (citing *Ashcroft*, 556 U.S. at 678) ("A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")).

This second amended complaint doesn't state any claims for which relief can be granted. If Mr. Davis believes he can state a claim based on (<u>and consistent with</u>) the events described in this complaint, he may file a third amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file a third amended complaint, he needs to write this cause number on a **<u>Pro Se 14 (INND Rev. 2/20) Prisoner Complaint</u>** form, which is available from his law library. He needs to write the words "Third Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form. The third amended complaint should only include claims that are related, and he should explain why he believes they are related. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against different defendants belong in different suits.").

For these reasons, the court:

(1) GRANTS the motion to amend (ECF 24);

(2) DIRECTS the clerk to separately docket ECF 24 as the second amended complaint;

(3) GRANTS Jermaine Carl Davis until **<u>September 29, 2026</u>**, to file a third amended complaint in accordance with this order; and

(4) CAUTIONS Jermaine Carl Davis if he doesn't do so by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state any claims for which relief can be granted.

SO ORDERED.

August 31, 2026

*s/ Damon R. Leichty*
Judge, United States District Court